United States of America v. Jonathan Millage case number 2030086 and we are ready to hear from the appellant. Ms. Daly if you would again state your appearance for the record your name and your appearance and proceed discussing mootness first and then otherwise and let me know if you want to reserve anything. I think the clock isn't moving so okay go ahead. Thank you your honor once again may it please the court Elizabeth Daly on behalf of the appellant Jonathan Millage and I do intend to endeavor to save five minutes of my time for a rebuttal. Addressing the issue of mootness for the court as you mentioned earlier that Mr. Millage was granted compassionate release by Judge Simon in the district court on his renewed motion that he filed after the 30-day wait period had expired. Luckily for Mr. Millage although more than 3,000 inmates in the federal Bureau of Prisons custody have contracted COVID-19 over the last 30 days Mr. Millage has luckily avoided that fate so far. He will be released on Monday presuming that circumstances stay as they are. The issue in this case has not been rendered moot by the grant of compassionate release and that is clear based on this court's numerous precedent discussing equitable early termination of supervised release when a district court erroneously denies consideration of early release and that was specifically addressed in the context of 3582 discretionary sentence reduction motions in the case of United States versus DM. I do know on mootness that the government bears a heavy burden in proving mootness and so the presumption here is that the case is not moot unless there's no even partial remedy that the court can grant. What can we grant partial remedy here? The partial remedy here is an opinion recognizing that the error occurred because if this court doesn't issue an opinion then that error has never been established and there can be no equitable factor in favor of early termination of supervised release. But early termination isn't before us right? This court doesn't grant that remedy. This court's opinion makes the remedy available through the district court. That's how it would work. And what's the district court going to give you that it hasn't given you already? This would be based on early termination of supervision under 18 USC 3583 E which can be granted in the interest of justice and as this court has said on numerous occasions when somebody is erroneously denied consideration for early release even though the sentence that was imposed and was being served as lawful the error in denying consideration for early release is an error that can be amenable to a partial remedy not a full remedy by having it be an equitable favor and equitable factor in favor of early termination. Here what you've got is not a denial of consideration you've got delayed consideration right? I say that the initial denial yes is the correct is the first answer there was a delay and there was also an initial denial. The district court denied the motion for compassionate release and as of the first day after that this error had accrued and the harm to Mr. Millage occurred. The court had authority on that first day to consider equitable exceptions. It didn't do that. That was an error and although Mr. Millage had later received consideration of a renewed motion that initial error hasn't been remedied and yet a partial remedy remains and so on the up or down question of mootness this case is not moot and that's exactly. If we say there was no error and we interpret the statute saying he mandatorily had to wait for the 30 days then you can't can you still make that motion? We can make the motion but we don't have that equitable factor in favor of it. But so you can make the motion regardless of what we say the law is. And it's discretionary on the part of the district court. Yes early termination is discretionary just like the sentence reduction here would have been discretionary but what the partial remedy is is that the court has recognized the error and that creates a legal factor in favor of equitable early termination. The district court doesn't have to grant early termination. The without having considered this factor but if this court doesn't recognize that error then there's no way that Mr. Millage can establish that it occurred. Isn't it entirely in the discretion of the district court and you could make this argument to the district court that that Mr. Millage was caused to wait unnecessarily even if this court never rules on the issue. Judge Simon has already held that the original denial was not erroneous and so without this court's opinion there's no way to make that claim. The fact that the remedy wouldn't be mandatory doesn't make the remedy unavailable. It's there only if the court recognizes the error. We're not reviewing the district court on that right now right? That's not before us. Can you maybe repeat the question? We're not reviewing that before us on what the what the district court did at this point. We're just interpreting the statute right? What the appeal is from is the original denial of compassionate release whether it was error to deny without considering equitable exceptions and yes that's an issue of statutory interpretation but if this court rules in our favor that establishes the error and that is the partial remedy. But you still have to you still have to show that there's a some realistic or reasonable possibility that Judge Simon would reduce your client's term of supervised release based on this purported error right? Or a non-trivial possibility at least. There's a threshold showing it's not just that theoretically the relief is available. Is that correct? This court has recognized that it's not merely speculative in multiple cases including United States versus DM another case involving a discretionary sentence reduction. Although it wasn't even clear in DM that the defendant would have gotten a sentence reduction. Was that a sentence reduction or a modification of the term of supervised release in that case? That was a 3582 motion identically to this case. The district court denied the defendants 3582 C2 motion which is a discretionary motion that the district court didn't have to based on believing that he had no authority to grant it just like Judge Simon in this case. And that error after the defendant was released was deemed remedy remediable by an opinion establishing the error. Because the opinion establishing the error contributes to equitable early termination. We don't have to establish that Judge Simon will grant early termination. All we have to establish is that this court's ruling would give us an equitable factor which it will. The court has also said this in cases involving Bureau of Prisons discretionary early release from completely lawful sentences as in either the ARDAP residential drug abuse program situation and also in the boot camp situation. And in these situations I think it's telling because in those cases early release is not in the bag. Early release is only permitted if the person gets discretionally accepted into the program which is usually where the error occurs that they get disqualified from it. They have to have no violations during the program. They have to successfully complete it. They have to have no violations during the remainder of their sentences. And only after that does the Bureau of Prisons decide as a matter of its discretion whether to grant early release. But this court has held on numerous occasions that if the initial consideration is denied and the person doesn't have the opportunity to even get that, that is the ruling establishing the error is not moved because it's an equitable factor in favor of early termination. So are you pretty confident you're gonna win here? Yes, Your Honor. Well, you must be. But the Sixth Circuit just ruled the other way, right? Yes, Your Honor. So that doesn't while that's not binding on us, it's if we ruled the way the Sixth Circuit ruled, that wouldn't accomplish any of the things that you're hoping to accomplish. And it would also be an opinion that would be an impediment for you with other clients that you're trying to get out, correct? Absolutely. Can I start with what I think is the heart of the matter as to the merits given the minimal amount of time left? I want to talk about how this court decides if equitable exceptions exist, which is not an up or down. Are they in the text or not? Because every case that has been cited to this court, there's no equitable exceptions in the text. And yet, time and again, the Supreme Court and this court have found equitable exceptions available for mandatory claim processing. No, but if you look at the language here, the relevant language, the statute provides that a court may not modify a term of imprisonment except upon motion of the defendant after he has exhausted his administrative remedies, or 30 days have lapsed. Why doesn't that language preclude equitable exceptions? Your Honor, pretty clear. The may not phrasing is not actually in C1a. C1a is if it finds. And I think that the eligibility factors are those standards that come after the words, if it finds. So you're saying the statute does not say may not? The statute says may not in the introductory provision. Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed, except that the court may reduce a term of imprisonment if it finds. And so the filing rules that come before, if it finds, are just that, filing rules. They're nestled into the procedural part of 3582 C1a. And that bias... I know that there's some attempt to modify, to amend this statute right now going on. So if the statute really says what you're saying it says, why do we need an amendment? Your Honor, there hasn't been an amendment. And what we're looking at is not... But there's one. They're trying to get one. And, uh... I think statutes can always be more clear, but we can't use congressional intent today to decide what Congress decided in 2018. And I think the question is, had Congress considered a fast moving pandemic that overwhelms prison systems in a matter of weeks, not months? Had Congress considered an administrative scheme where the agency, as a policy choice, has declined to intervene, has granted no motions for compassionate or brought no motions for compassionate release to the attention of the courts based on the coronavirus pandemic? Would Congress have approved measured and prudent, narrow exceptions based on a balancing of all of the factors to the 30-day rule? And on that point, I want to note that it's not necessarily an exception for exhaustion, but an exception for the 33 minutes. Do you want to reserve? Yes, Your Honor. Thank you. All right. We'll hear from the government. Thank you. May it please the Court. Amy Potter on behalf of the United States. I'll start with the issue of mootness. What makes this case different from the cases that this court, in which this court has decided that a defendant who has been released from custody has a viable claim related to his sentence, is that in all of those cases, the defendants were challenging their sentence, whether it was challenging the guidelines that were used for that sentence or challenging how the Bureau of Prisons calculated the sentence. But in this case, what the defendant is saying is, I get that you imposed a lawfully imposed sentence, but now my life has changed. Something has happened. And the other important fact is that Judge Simon said, I cannot decide this right now. In 30 days, I can decide this. I'm going to follow what Congress told me to do, which is give BOP 30 days to decide that. He waited 30 days, and Judge Simon has told us what he wants to happen and what is going to happen. An amended judgment is issued, and Mr. Millage will be have a three-year term of supervised release, the exact same term of supervised release that was imposed initially. So at this point, Mr. Millage has received a seven-month windfall. His sentence has been cut short seven months already. So in terms of showing a non-trivial belief that this extra 30 days would result instead in an eight-month windfall shouldn't meet the to note that the 30 days, we seem to be operating under the assumption that the minute a filing is made, the court is going to decide it. But there's no obligation for a court to decide a compassionate release motion the minute it's decided. In fact, in this case, from the time of the second motion until Judge Simon decided was 28 days. So these things are going to take time. The intent was that some of the things could be done in advance of filing. BOP can notify the victims of crimes. BOP can obtain the medical records. BOP can start a process with the U.S. Probation Office to examine a release plan, so that when the parties go into court, we are under a shortened time frame. That's assuming, of course, that BOP has decided to deny. Turning to that, and I think the in 2018, when Congress amended the statute, what would they have done if they knew a pandemic was coming? Well, Congress has answered that, because when they passed the CARES Act, they didn't focus on compassionate release. They focused on home confinement. And they said to the Bureau of Prisons, we want you to start using home confinement more. And so when Ms. Daly says the Bureau of Prisons has not filed for compassionate, or not requested from the court compassionate release on behalf of any of these inmates, what we don't know is how many of these inmates who typically simultaneously ask, either put me on home confinement or grant me compassionate release, are actually granted home confinement. And the reason that we want to focus on home confinement with the Bureau of Prisons is that is what the Bureau of Prisons itself can do. The Bureau of Prisons itself cannot grant compassionate release. What the Bureau of Prisons can do in this case, I think this is a good case for compassionate release. U.S. Attorney's Office, please tell the district court that's what we think. But with home confinement, they can immediately release someone to home confinement. Now, yes, I agree. Some people are not being released to home confinement that perhaps Ms. Daly or others think should. Perhaps it's not an instantaneous process. But from March 27th, I believe, from the CARES Act, until today, there's a 129% increase in home confinement releases. So that's a significant number of people who've been released. Those numbers are available on the BOP website, which is cited throughout our briefs. And what we're seeing is BOP is trying. Is it perfect? No. No one's saying it's perfect. But when we look back in 2018, when Congress changed the statute, and remember, before 2018, before the First Step Act, the district court never had jurisdiction to grant compassionate release. So Congress decided, and I agree with Ms. Daly, that BOP wasn't granting enough compassionate releases. Congress decided, OK, we're going to make it so that district courts can do this. But when Congress did that, it said, district courts, you can do this, but only after BOP has 30 days to evaluate this request. So Congress is saying, we are granting you very limited jurisdiction to consider these cases, but we're going to give BOP the first shot. And that's in 2018. Ms. Potter, does that comment mean that you disagree with the finding of the Sixth Circuit? That you disagree. You disagree. It's not jurisdictional. It is jurisdictional. It's not a mandatory condition, as the Sixth Circuit declared. Can you explain why? Yes, and I think it's important because in my colleague mentioned that the 3582 provisions for sentencing reductions were identical to this one for purposes of mootness. Well, they're also identical for purposes of jurisdiction. And this court has repeatedly said that 3582C is a jurisdictional provision. So in terms of looking at sentencing guideline reductions, retroactive sentencing guideline reductions, this court has said that it's a jurisdictional question. Does the defendant meet the minimum requirements to qualify for the sentencing guideline reduction? The answer, if the answer is no, that's a jurisdictional issue and the court cannot consider the provision. So the district court in this case was right and wrong. It refused to waive the requirement, but it invited the government to waive it, which would mean that it's not jurisdictional. Yes, and we But to pivot to that, if this court were to find it was a mandatory claims processing provision, there is not an equitable exception to those provisions. The cases where courts have defined an equitable exception have involved judicially created claims processing rules, not ones in the statute. Congress made very, very clear that it wants the 30-day provision. And that, I understand, in the Sixth Circuit notes, there's a footnote in the Fort Bend decision from, I believe it was 2019, where the Supreme Court says, maybe we'll reserve this, we're not going to address this. But historically, there have not been equitable exceptions to statutorily created claims processing rules. So the district court, well I agree, I disagree that with the district court that it wasn't jurisdictional. I believe it is jurisdictional, but to the extent that the court decided it was a mandatory claims processing rule, the only option to avoid that was if the government chose to waive it, and we did not choose to waive it in this case. And there's no equitable exception to be created. Because when Congress mandates exhaustion, it's required. The Supreme Court has said that repeatedly. It is required. And I also think it's being asked here. They're asking inmates to notify the warden of the institution. Over the last two months, we've decided that writing a letter that lists all the defendants that a particular lawyer represents at a certain institution, and saying, we believe all of these people qualify for compassionate release, that's sufficient to start the 30-day clock. And then we're talking about 30 days. When we look at some of the cases where there's significant concerns about exhaustion requirements, those courts are talking about months and months of delay to even get in the courthouse door. This is a 30-day requirement, during which all the things we talked about are being done. They're talking to the victims. They're examining the release plan. They're gathering medical records. This is not a significant period in terms of a normal exhaustion requirement. And if the court has no further questions for me, then I will sit down and I'll brief. Thank you. There don't appear to be additional questions. All right. Thank you. All right. And I think you have three minutes for rebuttal. We can't hear you. Or at least I can't. I'm sorry. I wanted to start off with what the Bureau of Prisons actually did. The clock isn't right. What are we doing with the clock here? I'm sorry, Judge. Okay, go ahead. Okay. So in several cases where the courts have looked at the text of the statutes and have not found equitable exceptions, they said, or in fact, where they have found equitable exceptions, they've said, even though the agency plays a role under the statute, there can be exceptions. And that was something that came up in Forrester v. Chertoff. In the EEOC context, the statute tells the EEOC, once an administrative request is made, you should do X, Y, and Z. You should investigate. You should notify the potential defendants. You should attempt informal reconciliation between the parties. The Bureau of Prisons has no statutory role to play. None of those things that Ms. Potter referenced are required by statute. Congress simply permitted the Bureau of Prisons to be involved if they could do so quickly, but they didn't mandate that the BOP be involved. I think that's an important point when comparing this statutory and administrative scheme with other ones that are being decided. It is also simply not true that statutory exhaustion provisions can't be accepted. On one level, this isn't a statutory exhaustion provision. What we're asking for is an exception from the 30-day wait rule. And in Forrester v. Chertoff, a similar 30-day wait rule was deemed, although mandatory in text, subject to equitable exception and non-jurisdictional. That is exactly what we're looking for here, a balancing of the relevant factors. And I want to talk for a moment about the Sixth Circuit and the Third Circuit's opinions and where they went wrong. In both cases, they misrelied on Ross v. Blake, because that case is about the particular statute, the PLRA. There are differences here. The Supreme Court told courts, if there are differences, you should not reach the same rule. And that's what we're asking here. And then they also made a mistake of misunderstanding the Bureau of Prisons' role. In Elan, they said, Bureau of Prisons is processing urgent claims first. But we know that the Bureau of Prisons is processing no compassionate release cases based on the coronavirus pandemic. They've told Congress that they are not. That is not their policy. They are not doing it. There also is an issue of what exactly the rule is that we're asking, because in Elan and in Rhea, the Sixth Circuit and Third Circuit cases, they addressed broad exceptions. You can't accept it just because it's futile. You can't accept it just because there might be harm. What the court said in McCarthy is that there has to be an intensely practical balancing. You're not going to get a district court to accept a run-of-the-mill case, because in that case, 30 days is exceptionally swift. May I finish this thought, Your Honor? Well, your time's up. So you want us to rule your way and say it's not moved. Okay. Well summarized. There don't appear to be any additional questions, so this matter will stand submitted. Thank you. Thank you both for your argument.
judges: Callahan, Nguyen, Kane